ALEXANDER ROSENSWEIG, as Administrator of the Estate of GEORGE FLORES, Deceased, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 31049.)

Third Department, March 27, 1958.

*Louis J. Lefkowitz, Attorney-General* (*Paxton Blair* and *Peter E. Herzog* of counsel), for appellant.

*Jacob D. Fuchsberg, Abraham Fuchsberg* and *B. Hoffman Miller* for respondent.

Coon, J. Claimant has been awarded $80,000 for the alleged wrongful death of a professional prize fighter. The negligence of the State is said to be " permitting " or " licensing " decedent to engage in a professional fight when the State knew, or should have known, that he was not in proper physical condition to do so.

On August 29, 1951, decedent was " knocked out " in the eighth round of a professional fight in Madison Square Garden. It is without question that decedent was struck two very hard blows to the head immediately before his collapse. He died four days later from cerebral hemorrhage and cerebral edema. This was medically discovered by two open brain operations and upon autopsy. The negligence of the State found in the Court of Claims is the failure of examining doctors, alleged to be

employees of the State, to discover a pre-existing brain injury from a previous fight, without the benefit of open operation.

Decedent had engaged in a fight on July 24, 1951, and again on August 14, 1951. He lost the decision in both of these fights by a technical knockout (T. K. O.), which means that the referee stopped the fight although there was no actual knockout or "counting out." Before and after each of these fights decedent was examined by a physician approved by the State Athletic Commission's Medical Advisory Board, but selected and paid by the promoter of the fight. This board (consisting of doctors) merely provides a panel of doctors considered qualified to make physical examinations of fighters, but the individual doctor for any particular fight is selected from the panel by the promoter and paid by the promoter. Under these circumstances there is serious doubt as to whether the examining doctor is an employee of the State, but, even assuming employment by the State, claimant has not established negligence on the part of the examining doctors. Their competency is not questioned, and it has been held that the State is not liable for an honest error of judgment by a doctor employed by the State. (*St. George* v. *State of New York*, 283 App. Div. 245, affd. 308 N. Y. 681).

The doctor who examined decedent prior to the fatal fight had the benefit of the opinions of doctors who examined decedent after the two previous fights and who found no evidence of brain injury. A signed history given by decedent indicated no symptom of concussion or brain injury. A standard examination revealed no such symptom.

It is urged that there is evidence that some doctors believe it to be better medical practice to withhold permission to engage in another bout to a fighter who has received a severe beating about the head without a lay-off of from two to six months thereafter. It would, of course, be still safer to withhold permission forever. However, there was no official rule requiring such a compulsory lay-off and the State was under no duty to adopt or enforce such a rule, if a careful individual medical examination indicated, as here, that the fighter was in good physical condition. (*Pike* v. *Honsinger,* 155 N. Y. 201.)

For another reason the judgment may not be sustained. It is clear that the immediate proximate cause of the injury which resulted in death was the severe blow to the head which decedent suffered in the final fight. Claimant has failed to establish that this blow alone, irrespective of previous condition, would not have produced the fatal result. (*Williams* v. *State of New York,* 308 N. Y. 548; *Francey* v. *Rutland R. R. Co.,* 222 N. Y. 482; 1 Shearman and Redfield on Negligence, p. 108.)

Decedent was engaged in a concededly dangerous activity. From his experience he knew that he would likely be struck by blows to the head. In fact, the very objective of the contestants, well known in advance, is to " knock out " the opponent and cause him to fall to the floor in such condition that he is unable to rise to his feet for a specified time. Decedent assumed the risks known to be inherent in the fight. We do not agree with respondent that there was a violation of a statutory duty. (*Curcio* v. *City of New York*, 275 N. Y. 20; *Murphy* v. *Steeplechase Amusement Co.*, 250 N. Y. 479.) Because the State undertook to make a dangerous sport less dangerous by some regulation does not make the State an insurer of the participants. To uphold this judgment would mean extending the liability of the State to unprecedented and unrealistic limits.

The judgment should be reversed on the law and the facts, and the claim dismissed, without costs.

FOSTER, P. J., BERGAN and GIBSON, JJ., concur.

Judgment reversed and claim dismissed, without costs.